UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BONNIE TURPPA,

           Plaintiff,

v.                                      Case Number 09-12974-BC
                                       Honorable Thomas L. Ludington

COUNTY OF MONTMORENCY,

           Defendant.

_____/

## OPINION AND ORDER DIRECTING ADDITIONAL BRIEFING AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff Bonnie Turppa believes that her employment was terminated because of her age, and that she is entitled to relief under state and federal law. 29 U.S.C. §§ 621–629; Mich. Comp. Laws §§ 37.2101–.2804. To obtain relief from this Court, however, she must first identify her employer or employers. For most employees that is a simple task. But for Ms Turppa, it is complicated by the structure of the Michigan Judiciary and the relationship between the state's trial courts and the local government units that fund their operation. Because this is an important question that has surfaced with increasing regularity in this District, it deserves considered attention.

Defendant Montmorency County filed a motion to dismiss [Dkt. # 4] on November 17, 2009, contending that it was never Plaintiff's employer, and as a result, it cannot be liable for age discrimination under the Age Discrimination in Employment Act ("ADEA") or the Elliott-Larsen Civil Rights Act ("ELCRA"). Plaintiff filed a response and a separate motion for sanctions [Dkt. # 8] on December 14, 2009, contending that the motion to dismiss, grounded on the assertion that Defendant was not Plaintiff's employer, was filed in bad faith and that Plaintiff is entitled to attorney fees and costs associated with contesting the motion.

The Michigan Constitution of 1963 provides for three branches of government, and declares that persons "excising powers of one branch" shall not "exercise powers properly belonging to another branch." Mich. Const. art. III, § 2. The legislative branch consists of a house and senate, and is charged with enacting laws governing everything from taxes to public health. Mich. Const. art. IV. The executive branch consists a governor, lieutenant governor, and various department heads, such as the secretary of state and attorney general, who are empowered to administer the state's government. Mich. Const. art. V. The judicial branch consists of "one court of justice," which is divided into a supreme court, court of appeals, circuit courts, probate courts, and other courts created by a two-thirds vote of the legislature. Mich. Const. art. VI. The supreme court maintains "general superintending control" over all the state's courts. Mich. Const. art. VI, § 4.

The state constitution also provides for the organization of counties, townships, and other forms of local government. Mich. Const. Art. VII. Local governments, despite their constitutional standing, are not always treated equally to their state-level counterparts. For example, the State of Michigan is generally immune from suit in federal courts under the doctrine of sovereign immunity. *See Alden v. Maine*, 527 U.S. 706 (1999). Local government units, like counties and townships, are not. *See Cady v. Arenac County*, 574 F.3d 334, 345 (6th Cir. 2009). There are exceptions to the doctrine of sovereign immunity. In the context of employment discrimination, for example, the Michigan Court of Appeals has noted that immunity does not bar suits against the state under ELCRA. *See March v. Dep't of Civil Serv.*, 142 Mich. App. 557, 569 n.10 (1985). Similarly, Congress has largely waived the defense of sovereign immunity in the context of a Title VII suit both as to federal government defendants and state government defendants. *See Loeffler v. Frank*, 486 U.S. 549 (1988); *Cox v. Shelby State Cmty. College*, 48 F. App'x 500 (6th Cir. 2002).

Several courts have previously considered whether the Michigan trial courts' administrative employees work for the court or the county. Each of those courts have held that an employee of a Michigan state court, whether a probate, circuit, or district court, is an employee of the court and not an employee of the county where the court is located. However, those decisions are not binding authority and do not foreclose consideration of the specific issues and factual circumstances presented in this case. Defendant may be, as Plaintiff contends, her "employer" within the meaning of the ADEA and ELCRA. On the other hand, the Montmorency County Probate Court or the State of Michigan could be her "employers" too. There is simply insufficient information in the record to make that determination at this time.

Accordingly, the motion for sanctions will be **DENIED** because the motion to dismiss was not filed in bad faith or for an improper purpose, and the assertions in the motion are supported by existing law. Fed. R. Civ. P. 11(b). The motion to dismiss will not be resolved until several unanswered questions have been briefed.

I

Plaintiff was hired as the "Deputy Probate/Juvenile Register in the Probate Court Office in Montmorency County" on July 17, 1995. Def.'s Answers to Interrogatories at 4; [Dkt. # 7-10]. She was elevated to the position of "probate register" in 1998 by then-Montmorency County Chief Probate Judge Robert P.M. Norstrom. Pl.'s Compl. ¶ 10. A "probate register" is a statutorily defined position with specific powers and duties. Mich. Comp. Laws §§ 600.833–.834. She served as probate register until October 29, 2007 when her employment was terminated by Montmorency County Chief Probate Judge John E. Fitzgerald. Pl.'s Resp.; [Dkt. #7-6]. Plaintiff was more than forty years old when her employment was terminated. Pl.'s Compl. ¶ 6.

From 1998, when she was appointed probate register, until 2000, Plaintiff served without the assistance of a deputy register. *Id.* ¶ 13. In 2002, while the probate court was still under the direction of Judge Norstrom, Montmorency County approved funding to hire a deputy probate register to work two or three days per week. *Id.* ¶ 14. Judge Nordstrom retired in July 2003, and he was replaced by Judge Michael G. Mack that fall. *Id.* ¶¶ 15–16. In March 2006, Judge Mack resigned, and the deputy register also left for a different position. *Id.* ¶¶ 19–20. After Judge Fitzgerald was appointed to fill the vacancy in May 2006, Jodi Gordon was hired to fill the vacant deputy probate register position in October 2006. *Id.* ¶¶ 21–22. Plaintiff was responsible for training Gordon, who was 39 years old, as she had been for training both of the previous deputy probate registers. *Id.* ¶¶ 22–26.

Plaintiff asserts that in August 2007, Judge Fitzgerald started asking Plaintiff about retirement, "in light of her age," suggesting that he would like her to retire. *Id.* ¶¶ 27–28. Plaintiff asserts that Judge Fitzgerald never questioned her ability to do her job, and that concerns about her performance were not raised until her employment was terminated. *Id.* ¶¶ 28–30. On October 27, 2009, Plaintiff had a discussion with Judge Fitzgerald and Montmorency County Coordinator Robert Goodall in the Judge's office. *Id.* ¶ 32. She was asked to resign, and when she refused, her employment was terminated. *Id.* ¶¶ 33–35. Gordon, the former deputy probate register, was appointed probate register in December 2007. *Id.* ¶ 37.

**II**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds

upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)). If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer. Fed. R. Civ. P. 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 555–56 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)). "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, Defendant Montmorency County asserts that as a matter of Michigan law, Plaintiff is not entitled to relief from the County because it is not her "employer" under the ADEA or ELCRA. Plaintiff's response includes thirteen exhibits to supplement the allegation in paragraphs one and five of her complaint that the County is her "employer" within the meaning of the ADEA and ELCRA. The question is one of law, but it depends on the specific facts of the case. *See, e.g.*, *McCarthy v. State Farm Ins. Co.*, 170 Mich. App. 451, 454 (1988). Accordingly, the exhibits are relevant to the determination of the issue and will be considered.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Accordingly, Defendant's motion to dismiss will be treated as a motion for summary judgment. Defendant, in submitting it supplemental brief, should include any additional information it believes to be relevant to the determination of the motion.

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant evidence, "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

### III

Both the ADEA and ELCRA prohibit employers from discharging an employee, or otherwise discriminating against an employee, on the basis of that individual's age. 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age  . . . ."); Mich. Comp. Laws § 37.2202(1)(a)

("An employer shall not . . . discharge, or otherwise discriminate against an individual . . . because of . . . age . . . ."). The evidentiary burden on the employee is the same under both statutes, *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159 (6th Cir. 1990), and although the statutes define "employer" in different ways, those differences are not relevant to the question presently before the court.[1] Accordingly, the question of whether Montmorency County, the probate court, or some other governmental entity is Plaintiff's employer is identical under both statutes.

Defendant asserts that it is not Plaintiff's "employer," and as a result, it cannot be liable for age discrimination under the ADEA or ELCRA. Defendant relies on the Michigan Supreme Court's decision in *Judicial Attorneys Ass'n v. Michigan* for the proposition that individuals who work for Michigan's court system are employees of the court and not the county or other local government entity that funds their salaries. 459 Mich. 291 (1998). *Judicial Attorneys Ass'n* arose out of Public Act 374 of 1996, which restructured the Michigan judiciary and reorganized the statutes governing the state's courts within the Michigan Compiled Laws. 1996 Mich. Legis. Serv. 374 (West). Among other things, the Act made individual employees of the Michigan circuit courts, district courts, and probate courts, except for judges, employees of the local government unit that funded their employment. Mich. Comp. Laws §§ 600.591 (Circuit Courts); 593a (Detroit Recorder's Court); 837 (Probate Courts); 8271 (District Courts); 8273 (other Wayne County and Detroit area

---

[1] Under the ADEA, the term "employer" means "a person engaged in an industry affecting commerce who has twenty or more employees . . . . The term also means (1) any agent of such a person, and (2) a State or political subdivision of a state and any agency or instrumentality of a State or political subdivision of a State . . . ." 29 U.S.C. § 630(b). Under ELCRA, the term "employer" means "a person who has 1 or more employees, and includes an agent of that person." Mich. Comp. Laws § 37.2201(a). Both statutes apply to local and state governments and their political subdivisions. The principle difference is that the ADEA applies only to employers with more than twenty employees, while ELCRA applies to all employers. *See Equal Employment Opportunity Comm'n v. Monclova Twp.*, 920 F.2d 360 (6th Cir. 1990).

courts); 8274 (Detroit Judicial Council).[2] Pursuant to the Act, the Montmorency County probate register was made an employee of Montmorency County. Mich. Comp. Laws § 600.837(2) ("In a county that is not part of a probate district, the county is the employer of the county-paid employees of the probate court in that county.").

In *Judicial Attorneys Ass'n*, however, the Michigan Supreme Court concluded that portions of the statute in which the legislative branch attempted to make judicial workers employees of the county in which they work were unconstitutional. 459 Mich. at 294. The court based its decision on Michigan constitutional provisions that guarantee three separate and independent branches of government. Relying on Article 3, § 2 of the Michigan Constitution,[3] the court reasoned that "[t]he power of each branch of government within its separate sphere necessarily includes managerial administrative authority to carry out its operations." *Id.* at 297. The legislative branch's attempt to limit the judicial branch's control of court workers, "impermissibly interfere[d] with the judiciary's inherent authority to manage its internal operations." *Id.* at 301. Contrary to the Act, the state Supreme Court decided, workers who support Michigan's circuit courts, district courts, and probate courts are not employees of the county in which they work or the local government unit that funds their salaries and benefits, but of the state's "one court of justice." *Id.* at 298 (quoting Mich. Const. art. 6, § 1 ("The judicial power of the state is vested exclusively in one court of justice . . . .")).

Although *Judicial Attorneys Ass'n* involved a challenge to § 593a of the Revised Judicial

---

[2] In areas where courts were combined into districts encompassing more than one county, the counties were empowered to enter into agreements to form separate entities to employ court workers. *See* Mich. Comp. Laws §§ 124.531, .536.

[3] Article 3, § 2 provides: "The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

Code, which involved only the abolition of the state judicial council and the Detroit Recorder's Court and the combination of those bodies into the 36th District Court and the Third Judicial Circuit Court, the Michigan Supreme Court also decided that several other sections of the code, as amended by the 1996 Act, were unconstitutional. 459 Mich. at 294; *see also* Mich. Comp. Laws § 600.593a. One of the provisions partially struck down by the court was § 600.837 of the Revised Judicial Code. Section 837 governs the operation of the probate courts in Michigan and the division of authority over county-paid employees between the county and the chief judge of the court. In *Judicial Attorneys Ass'n*, the Michigan Supreme Court decided that the provisions of § 837 that are "parallel" to § 593a(3)–(10) were unconstitutional and must be stricken from the statute. 459 Mich. at 294. The Michigan courts have not revisited the issue to elaborate on precisely which portions of § 837 are "parallel" to subsections 3–10 of § 593a. The relevant provisions of § 593a provide:

> (3) If the Wayne county judicial council is not created pursuant to subsection (1), the employees of the former state judicial council serving in the circuit court in the third judicial circuit or in the recorder's court of the city of Detroit shall become employees of the county of Wayne, effective October 1, 1996.
>
> (4) The employer designated under subsection (2) or (3), in concurrence with the chief judge of the appropriate court, has the following authority:
>
> (a) To establish personnel policies and procedures, including, but not limited to, policies and procedures relating to compensation, fringe benefits, pensions, holidays, leave, work schedules, discipline, grievances, personnel records, probation, and hiring and termination practices.
>
> (b) To make and enter into collective bargaining agreements with representatives of those employees.
>
> (5) If the employer designated under subsection (2) or (3) and the appropriate chief judge are not able to concur on the exercise of their authority as to any matter described in subsection (4)(a), that authority shall be exercised by either the employer or the chief judge as follows:
>
> (a) The employer has the authority to establish policies and procedures relating to

compensation, fringe benefits, pensions, holidays, and leave.

(b) The chief judge has authority to establish policies and procedures relating to work schedules, discipline, grievances, personnel records, probation, hiring and termination practices, and other personnel matters not included in subdivision (a).

(6) The employer and the chief judge each may appoint an agent for collective bargaining conducted under subsections (4) and (5).

(7) The chief judge of the circuit court in the third judicial circuit or of the recorder's court may elect not to participate in the collective bargaining process for the employees in that court.

(8) Except as otherwise provided by law, the chief judge of the circuit court in the third judicial circuit or of the recorder's court shall appoint, supervise, discipline, or dismiss the employees of that court in accordance with personnel policies and procedures developed pursuant to subsection (4) or (5) and any applicable collective bargaining agreement. Compensation of the employees serving in the circuit court in the third judicial circuit and serving in the recorder's court of the city of Detroit shall be paid by the county of Wayne.

(9) The role of the chief judge under this section is that of the principal administrator of the officers and personnel of the court and is not that of a representative of a source of funding. The state is not a party to the contract. Except as otherwise provided by law, the state is not the employer of court officers or personnel and is not liable for claims arising out of the employment relationship of court officers or personnel or arising out of the conduct of court officers or personnel.

(10) All employees of the former state judicial council serving in the circuit court in the third judicial circuit or in the recorder's court shall be transferred to, and appointed as, employees of the appropriate employer designated under subsection (2) or (3), subject to all rights and benefits they held with the former court employer. An employee who is transferred shall not, by reason of the transfer, be placed in any worse position with respect to worker's compensation, pension, seniority, wages, sick leave, vacation, health and welfare insurance, or any other terms and conditions of employment that the employee enjoyed as an employee of the former court employer. The rights and benefits protected by this subsection may be altered by a future collective bargaining agreement or, for employees not covered by collective bargaining agreements, by benefit plans as established and adopted by the employer designated under subsection (2) or (3). An employee who is transferred shall not be made subject to any residency requirements by the employer designated under subsection (2) or (3).

Accordingly, the provisions of § 837 that make "county-paid employees of the probate court"

employees of the county were eliminated. *Compare* § 837(2) *with* § 593a(2)–(3). Similarly, the provisions of § 837 that divide managerial and administrative duties between the county and the chief probate judge were also eliminated. *Compare* § 837(3)–(4), (7)–(8) *with* § 593a(4)–(5), (8)–(10). The provisions in § 837 granting the chief judge authority to appoint an agent for collective bargaining were also eliminated. *Compare* § 837(5)–(6) *with* § 593a(6)–(7). Notably, however, there is no parallel in § 593a to subsection (1) of § 837. Subsection (1) of § 837 provides:

> The county board of commissioners in each county shall annually appropriate, by line-item or lump-sum budget, funds for the operation of the probate court in that county. However, before a county board of commissioners may appropriate a lump-sum budget, the chief judge of the probate court in that county or that probate district shall submit to the county board of commissioners a budget request in line-item form with appropriate detail. A court that receives a line-item budget shall not exceed a line-item appropriation or transfer funds between line items without the prior approval of the county board of commissioners. A court that receives a lump-sum budget shall not exceed that budget without the prior approval of the county board of commissioners.

Because subsection (1) was not eliminated by *Judicial Attorneys Ass'n*, each county retained substantial authority over the budget of the probate courts they funded. The counties could grant the court a lump-sum budget to be distributed at the chief judge's discretion, or a line-item budget funding only specific amounts for various functions, at the discretion of the county board. Although Montmorency County's election in this regard is not part of the record, the chief judge of the probate court and the county board of commissioners in each county were left with extensive discretion to organize, manage, and administer the court and its employees.

In a related challenge to Public Act 374 of 1996, the Michigan Supreme Court held that the abolition of the Detroit Recorder's Court and the requirement that the City of Detroit and Wayne County fund the newly reconfigured 36th District Court and Third Circuit Court, respectively, did not violate the Headlee Amendment of the Michigan Constitution. *Judicial Attorneys Ass'n v.*

*Michigan* (*Judicial Attorneys Ass'n II*), 460 Mich. 590 (1999); *see also* Mich. Const. art. 9, § 29. The Headlee Amendment prohibits the State of Michigan from requiring that local governments provide new or increased services unless the state appropriates money to fund the new or increased service. Mich. Const. art. 9, § 29. In short, it prohibits what local politicians often call "unfunded mandates."

In *Judicial Attorneys Ass'n II*, Wayne County and the City of Detroit argued that Public Act 374 increased the level of judicial services they were required to provide without a corresponding increase in funding for those services from the state. 460 Mich. 590. The Michigan Supreme Court disagreed. First, the high court interpreted the Headlee Amendment "narrow[ly]," deciding that the Amendment would be implicated only if the state mandated that local governments collectively fund a new activity. *Id.* at 597–600, 606–07. For example, if the state legislature created a new trial court from whole cloth and required each county to provide funding for the new court, the Headlee Amendment would be implicated. But if the state legislature merely required a specific local government to fund a trial court that already existed in the rest of the state and had long been funded by other local governments, the Headlee Amendment would not apply. *See id.* at 603 (noting that the Headlee Amendment "primarily addresses shifts from the state to local units" not shifts "among local units"). Second, district courts and circuit courts already existed across the state. *Id.* at 609–10. As a result, requiring the City of Detroit and Wayne County to fund newly reconfigured district and circuit courts did not violate the Headlee Amendment because it merely brought the city and county in line with what other cities and counties across the state were required to provide. It did not require, collectively, a new or increased service. The state had long required local government units to fund trial courts, with the exception of judicial salaries, and Public Act 374 did

not alter that requirement. *Id.*

Public Act 374 was not the last legislative effort to reorganize the state trial courts without providing any significant expansion of state funding or any significant contraction in county responsibility for the management and administration of court employees. For example, beginning in 1998, the Legislature removed some of the family court functions from the probate courts and placed them within the jurisdiction of the circuit courts. 1996 Mich. Legis. Serv. 388 (West). Pursuant to a 2002 amendment, the chief circuit judge and chief probate judge in each judicial circuit were required meet and establish a " 'family court plan' that details how the family division will be operated in that circuit and how the services of the agencies listed in section 1043 will be coordinated in order to promote more efficient and effective services to families and individuals." Mich. Comp. Laws. § 600.1011; 2002 Mich. Legis. Serv. 682 (West). Pursuant to a family court plan, a probate judge is empowered to assume some powers reserved for circuit judges in juvenile courts, as long as that judge is named in the plan. *Id.*; Mich. Comp. Laws § 600.1021(3). Perhaps coincidentally, 2002 was also the year that Montmorency County first approved funding to hire a deputy probate register.

In 1997, following its first decision in *Judicial Attorneys Ass'n*, the Michigan Supreme Court also issued an Administrative Order in an effort to streamline administration of the state's trial courts.[4] In Administrative Order 1998-5, the Michigan Supreme Court first emphasizes that funding trial courts is the primarily the responsibility of the local government entity where the court is

---

[4] The order was initially issued as Administrative Order No. 1997-6, but it was rescinded and replaced the next year by Administrative Order No. 1998-5. Administrative Order No. 1998-5 remains in effect. *See* A.O. 1998-5; [Dkt. # 10-2] *available at* http://coa.courts.mi.gov/rules/documents/3AdministrativeOrders.pdf.

located, and sets limits on the ability of chief judges to create new positions, promote employees, and enter into long-term agreements concerning wages and benefits. A.O. 1998-5 ¶¶ 2–3; [Dkt. # 10-2]. The order then addresses managerial and administrative duties, suggesting the creation of a "local court management council" made up of representatives of the judiciary and the local government funding unit to set and enforce policies for judicial workers. *Id.* ¶ 4. In the absence of a management council, the chief judge of the court is empowered to set "personnel policies concerning compensation, fringe benefits, pensions, holidays, [and] leave" but the judge "must consult regularly with the local funding unit" during the process. *Id.* ¶ 5. Moreover, the policies set by the judge "must" be "consistent with the written employment policies of the local funding unit." *Id.* ¶ 6. The order recognizes that in creating policies for district and circuit courts that encompass multiple counties, it may not be possible to conform court policies with every policy of each funding unit, but also provides that if the court encompasses only one county and all its funding comes from that county, its personnel policies should mirror that county's policies. *Id.*

The unique structure provided for in the Administrative Order is consistent with the Michigan Supreme Court's earlier decisions, including *Grand Traverse County v. State of Michigan*, 450 Mich. 457 (1995). In *Grand Traverse County* the court held that nothing in the Michigan Constitution requires the state to fund Michigan's trial courts even though they are a branch of state government. *Id.* at 459. The court noted that the state constitution's establishment of "one court of justice" was not intended "to change the traditionally local character of the courts to one totally controlled and funded by the state. Rather . . . the focus was on administration of the court system, . . . dealing primarily with the degree of authority that would be given to the Supreme Court in overseeing the operation of lower courts." *Id.* 473. The court went on to acknowledge the hybrid

nature of the trial courts, which "have always been regarded as part of state government, [but] they have operated historically on local funds and resources." *Id.* at 474.

Two important themes can be drawn from these background principles. First, Michigan's constitutional provisions guaranteeing three separate and independent branches of government mean that the legislative branch cannot constitutionally mandate that employees who provide administrative support for trial court judges become employees of the local government unit that funds their position. Such a mandate from the legislature impermissibly interferes with the day-to-day management of the judiciary and violates the constitutional separation of powers requirement. Second, although the legislative branch cannot unilaterally make the judiciary's administrative staff employees of the counties where they work or give county executives managerial control over those employees, individual judges may delegate some of the managerial and administrative duties related to hiring, firing, and compensating judicial workers to local administrators for the sake of convenience and efficiency. Indeed, the judges are encouraged by the Michigan Supreme Court to adopt the counties' personnel policies concerning compensation, benefits, holidays, and pensions unless there is a good reason to deviate. This is a reflection of the "hybrid" nature of Michigan's courts.

## IV

Keeping in mind the foregoing, it is appropriate to turn to the specific facts of this case. Plaintiff's salary was paid by a check issued from a county payroll account. The county was identified as her employer on a tax year 2007 W-2 form provided by the County to Plaintiff and the IRS. [Dkt. # 7-13]. The County was listed as her employer and responded as her employer to inquiries from the Michigan Unemployment Insurance Agency regarding her eligibility for

unemployment benefits. [Dkt. # 7-3]. A November 5, 2007 letter from Judge Fitzgerald to Cheryl Neilsen, the Montmorency County Clerk, noted that Plaintiff's "last date of employment as Probate Register for the Montmorency County Probate Court and the County of Montmorency was Monday October 29, 2007." [Dkt. # 7-5]. Two letters from Judge Fitzgerald to Plaintiff regarding the termination of her employment noted that she was an employee of the "Montmorency County Probate Court" without separately mentioning the County, but the first letter directed her to the "County Coordinator" with questions about her final paycheck and the second letter was cosigned by the Rober Goodall, the County Coordinator. [Dkt. # 7-4, 7-6]. The County Coordinator was also present when Judge Fitzgerald asked Plaintiff to resign and then terminated her employment, and the resignation letter she was asked to sign noted she would be voluntarily resigning her "employment with Montmorency County and the Montmorency County Probate Court." [Dkt. # 7-7]. When she began her employment as deputy probate register in 1997, she signed a written acknowledgment that the position was subject to the "Montmorency County Manual of Personnel Policies."[5] [Dkt. # 7-8]. The Montmorency County Board of Commissioners independently decided in November 2007 that Plaintiff should be reimbursed for unused vacation time. [Dkt. # 7-11].

Still, the chief probate judge retains ultimate responsibility for managing probate court employees. The decision to terminate Plaintiff's employment was made by the county's chief probate judge. Considering those facts alone, a compelling case can be made that the county, with

---

[5] Defendant disputes the applicability of the Montmorency County Personnel Policies in its reply brief. Defendant has also included a declaration from Judge Fitzgerald, which states that the Probate Court has its own policies and those policies have been filed with the Supreme Court Administrative Office. It also states that the Probate Court "has not formally adopted" the Montmorency County policies, but that the Court does follow those policies "to the extent they are consistent" with the court's policies.

the consent of the court, acts as Plaintiff's co-employer. The chief judge had ultimate authority over Plaintiff's job duties, but many administrative and managerial matters were handled by the county. The county paid her salary, provided her benefits, and participated in the decision-making process which ultimately led to her termination.

V

Before resolving the motion to dismiss, several additional issues need to be addressed. First, if the Montmorency County Probate Court adopted separate personnel policies from Montmorency County, the court's policies should be provided along with a summary of how they differ from the county's policies. The statutorily required family court plan should also be provided to the extent it contains relevant information about the structure and function of the Montmorency County Courts and their administrative operations. The process by which those plans and policies were developed and implemented may also be relevant. Second, if the county and the court share responsibility for Plaintiff's employment, the extent of relevant immunity issues should be addressed. Is the county probate court immune from suit in federal court because it is an arm of the state under the doctrine of sovereign immunity? If so, what is the justification for permitting Plaintiff to proceed in a federal forum where the state, arguably a necessary party, may not be joined as a party? Third, the parties have not provided sufficient information about the budgetary process for the Montmorency County Probate Court. Is it appropriated as a lump-sum or in line-item detail? *See* Mich. Comp. Laws § 600.837(1). Similarly, is there a "management council" empowered to set policies for judicial workers, or are policies set by the chief probate judge in consultation with county officials? *See* A.O. 1998-5; [Dkt. # 10-2]. Finally, in light of the decision to treat Montmorency County's motion to dismiss as a motion for summary judgment, additional discovery may be necessary to develop

factual information concerning, inter alia, court and county policies, the identity of the persons who decided to terminate Plaintiff's employment, and details about the decision-making process that led to the termination.

Accordingly, it is **ORDERED** that Plaintiff's motion for sanctions [Dkt. # 8] is denied because Defendant's assertions in the motion to dismiss are not frivolous or without support under existing law. Fed. R. Civ. P. 11(b).

It is further **ORDERED** that in light of difficulty in determining who Plaintiff's employers were, supplemental briefing will be required. Defendant is **DIRECTED** to submit a supplemental brief no longer than ten pages addressing the questions outlined in this opinion on or before **May 28, 2010**. The Montmorency County Probate Court personnel policies, family court plan, and other documents relevant to the determination should be attached as exhibits. Plaintiff is **DIRECTED** to submit a response no longer than ten pages on or before **June 11, 2010**.

It is further **ORDERED** that representatives of each party are **DIRECTED** to appear for an in person status conference on **June 29, 2010 at 4:00 p.m.**

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: April 28, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 28, 2010.

                s/Tracy A. Jacobs  
                TRACY A. JACOBS