UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BONNIE TURPPA,

           Plaintiff,

v.

Case Number 09-12974-BC
Honorable Thomas L. Ludington

COUNTY OF MONTMORENCY,

           Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND AMENDING THE CASE MANAGEMENT AND SCHEDULING ORDER

On July 29, 2009 Plaintiff Bonnie Turppa filed a complaint alleging she was discriminated against by Defendant County of Montmorency because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–629, and the Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws §§ 37.2101–.2804. The case was initially assigned to Judge Stephen J. Murphy, III in Detroit, but was reassigned to this Court on January 20, 2010 because the initial assignment was the result of a clerical error. *See* E.D. Mich. L.R. 83.10(b)(3) & 83.11; [Dkt. # 12]. Before the reassignment, Defendant filed a motion to dismiss [Dkt. # 4] on November 17, 2009, contending that Montmorency County is not Plaintiff's employer. Plaintiff filed a motion for sanctions [Dkt. # 8] on December 14, 2009, contending the motion to dismiss was filed in bad faith and that Plaintiff is entitled to attorney fees and costs associated with contesting it.

On April 28, 2010, the Court issued an Opinion and Order denying Plaintiff's motion for sanctions and directing additional briefing on the motion to dismiss. The Opinion and Order [Dkt. # 16] noted that determining the identity of Plaintiff's employer or employers in this instance is

"complicated by the structure of the Michigan Judiciary and the relationship between the state's trial courts and the local government units that fund their operation." Before her termination, Plaintiff was a probate register for the Montmorency County Probate Court—a position involving judicial responsibilities supervised by an officer of the court but funded and administered by the county. The Court requested that the parties focus their supplemental briefing on the personnel policies applicable to the Montmorency County Probate Register, whether the probate court is an "arm of the state" and immune from suit, the budgetary and management processes for the probate court, and whether additional discovery would be necessary to answer the questions raised.

The supplemental briefing has been received. Plaintiff has advanced enough evidence to substantiate her allegation that Montmorency County and the Montmorency County Probate Court may be Plaintiff's co-employers. As a result, both are subject to suit for the allegedly discriminatory discharge, but neither is necessarily a "required" party under Federal Rule of Civil Procedure 19(b). The probate court is not "required to be joined" because Plaintiff's complaint seeks damages and not reinstatement. Indeed, as Defendant emphasizes in its supplemental brief there are two significant reasons Plaintiff may have decided not to join the probate court as a Defendant. First, there is some degree of probability that the probate court is immune from suit as an arm of the state. *Lowe v. Hamilton County Dep't of Job & Family Servs.*, __ F.3d __, No. 09-3532, 2010 WL 2605945 (6th Cir. July 1, 2010); *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005); *Dolan v. City of Ann Arbor*, 666 F. Supp. 2d 754 (E.D. Mich. 2009); *Pucci v. Nineteenth Dist. Ct.*, 565 F. Supp. 2d 792 (E.D. Mich. 2008). Second, because Montmorency County Probate Court was not named as a party in Plaintiff's proceedings before the Equal Employment Opportunity Commission ("EEOC"), she may not have successfully exhausted her administrative claims against the probate

court. Accordingly, Plaintiff will be permitted to proceed against only the county, and the scheduling order will be extended in light of the delays associated with transferring the case from the Southern Division and resolving Defendant's pre-answer motion to dismiss.

**I**

Defendant initially challenged Plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)). If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer. Fed. R. Civ. P. 12(b)(6).

In the previous Opinion and Order, the Court determined that both parties had submitted materials outside the pleadings and it was appropriate to consider those materials in determining which entity or entities employed Plaintiff. Accordingly, the motion to dismiss was converted to a motion for summary judgment pursuant to Rule 56. Fed. R. Civ. P. 12(d). Notably, the motion was filed early in the case. As a result, the factual information that has been submitted and considered is only that information known to the parties when the case was filed, and additional information may be learned or challenged as discovery progresses. Both parties may learn information that is at present in the sole possession of their opponent.

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The

party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant evidence, "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

## II

Plaintiff was hired as the "Deputy Probate/Juvenile Register in the Probate Court Office in Montmorency County" on July 17, 1995. Def.'s Answers to Interrogatories at 4; [Dkt. # 7-10]. She was elevated to the position of "probate register" in 1998 by then-Montmorency County Chief Probate Judge Robert P.M. Norstrom. Pl.'s Compl. ¶ 10. A "probate register" is a statutorily defined position with specific powers and duties. Mich. Comp. Laws §§ 600.833–.834. She served as probate register until October 29, 2007 when her employment was terminated by Montmorency County Chief Probate Judge John E. Fitzgerald. Pl.'s Resp.; [Dkt. #7-6]. Plaintiff was more than forty years old when her employment was terminated. Pl.'s Compl. ¶ 6.

From 1998, when she was appointed probate register, until 2000, Plaintiff served without the assistance of a deputy register. *Id.* ¶ 13. In 2002, while the probate court was still under the direction of Judge Nordstrom, Montmorency County approved funding to hire a deputy probate register to work two or three days per week. *Id.* ¶ 14. Judge Nordstrom retired in July 2003, and he was replaced by Judge Michael G. Mack that fall. *Id.* ¶¶ 15–16. In March 2006 Judge Mack resigned, and the deputy register also left for a different position. *Id.* ¶¶ 19–20. After Judge

Fitzgerald was appointed to fill the probate court judge vacancy in May 2006, Jodi Gordon was hired to fill the vacant deputy probate register position in October 2006. *Id.* ¶¶ 21–22. Plaintiff was responsible for training Gordon, who was 39 years old, as she had been for training both of the previous deputy probate registers. *Id.* ¶¶ 22–26.

Plaintiff asserts that in August 2007, Judge Fitzgerald started asking Plaintiff about retirement, "in light of her age," and suggesting that he would like her to retire. *Id.* ¶¶ 27–28. Plaintiff asserts that Judge Fitzgerald never questioned her ability to do her job, and that concerns about her performance were not raised until her employment was terminated. *Id.* ¶¶ 28–30. On October 27, 2009, Plaintiff had a discussion with Judge Fitzgerald and Montmorency County Coordinator Robert Goodall in the Judge's office. *Id.* ¶ 32. She was asked to resign, and when she refused, her employment was terminated. *Id.* ¶¶ 33–35. Gordon, the former deputy probate register, was appointed probate register in December 2007. *Id.* ¶ 37.

### III

Defendant's response to the Court's request for additional briefing reiterates its position that "Plaintiff was an employee of the Montmorency County Probate Court, only," and not of the county. As the earlier Opinion and Order explained, in *Judicial Attorneys Ass'n v. Michigan*, 459 Mich. 291 (1998), the Michigan Supreme Court concluded that portions of Public Act 374 of 1996 designating court support workers, including probate registers, employees of the county where they work were unconstitutional. Defendant now emphasizes that Montmorency County reached a similar conclusion in a resolution passed by the County board shortly after Public Act 374 was passed by the Michigan Legislature. The resolution provides:

> By the lawful Authority of Const 1963, art 3, § 2, and art 6, § 1, county-paid employees of the Probate Court as defined [Public Act 374], § 837, are hereby declared to be the employees of the judicial branch of government-probate court

division.

Resolution of Montmorency County Declaring the Employer of County-Paid Employees of the Probate Court as Defined by 1996 PA 374, § 837, Res. No. 96-17, Aug. 14, 1996; [Dkt. 17-1]. Putting aside questions about whether a county board has authority to reach a legal principal contrary to a state law, the resolution at least provides some indication of the county board's intentions. Board members sought, through passage of the resolution, to ensure probate registers remained employees of the state and not the county at that point in time. The resolution does not, however, provide significant new information as to how court employment was administered or how the employees were actually managed by the court and the county. As explained in the previous Opinion and Order, the inquiry into whether the county, the court, or both were Plaintiff's employers depends more on how the county and court were actually managed than on conclusory statements by the state legislature, the county board, or even the Michigan Supreme Court.

Defendant also emphasizes a December 27, 2006 administrative order in which Judge Fitzgerald appointed Plaintiff as probate register and Plaintiff signed an acknowledgment of the terms of her employment. [Dkt. 17-6]. After outlining the duties of the Montmorency County probate register and Judge Fitzgerald's authority to make the appointment, the order provides that Plaintiff "is to assume the duties of Probate Register and said duties shall continue during the pleasure of this Court." *Id.* Defendant emphasizes that the document memorializes Plaintiff's understanding that her continued employment was subject to the "pleasure" of the chief probate judge. Defendant also emphasizes that the chief probate judge had sole supervisory authority over Plaintiff throughout her employment as probate register, and that participation by the County of Montmorency in administrative and managerial matters was only at the chief probate judge's request. For example, the decision to end Plaintiff's employment as probate register was made by

Judge Fitzgerald, acting alone, and County Coordinator Robert Goodall's presence when the information was delivered to Plaintiff was at Judge Fitzgerald's request. The county official was present only to serve as a witness to the discharge. *See* Goodall Aff., [Dkt. # 17-9]; Fitzgerald Aff., [Dkt. # 17-10].

Defendant also explains that the Montmorency County Probate Court uses a line-item budget proposal format. [Dkt. # 17-7–8]. That means that the chief probate judge submits a proposal to the county with line item detail, and the proposal can be approved or rejected by the county board. State statute provides a procedure for reconciling differences, if they occur. Mich. Comp. Laws § 600.837(1); *see also* Administrative Order 1998-5 *available at* http://coa.courts.mi.gov/rules/documents/3AdministrativeOrders.pdf.

Finally, Defendant acknowledges that Plaintiff, as probate register, was largely subject to the county's personnel policies. There is no management council for the probate court, unlike the circuit court, because its geographic jurisdiction is limited to Montmorency County. Defendant contends that the chief probate judge has sole authority to adopt personnel policies, and, in an exercise of his discretion, decided to adopt the 2000 Montmorency County personnel policy. [Dkt. # 17-23]. The chief probate judge also made some changes through administrative orders, such as adding additional holidays, like New Years Eve. [Dkt. # 17-11–13]. The chief probate judge did not, however, make any significant revisions to the Montmorency County personnel policy or explain whether he or the County administered it. Indeed, when Plaintiff sought compensation for unused vacation time following her termination, it was the Montmorency County Board of Commissioners and not the chief judge that determined her entitlement to payment for unused vacation time pursuant to the county's personnel policies.

In sum, the additional facts provided by the county at the Court's request do not change the

conclusion reached in the last Opinion and Order: the most logical inference that can be drawn from the circumstances surrounding Plaintiff's employment is that Plaintiff may have been a co-employee of both the county and the probate court. Although the chief probate judge exercises sole managerial control over the Montmorency County probate register's performance of judicial responsibilities, over time, some employment oversight duties were also being performed by the county. The county's personnel policies, for example, were adopted by the probate court and the county board made the determination, pursuant to those policies, of whether Plaintiff should be paid for unused vacation time when her employment ended. Indeed, it is undisputed that the county was also responsible for funding Plaintiff's position, was identified as Plaintiff's employer on the W-2 issued for federal income tax purposes and submitted to the Internal Revenue Service, and responded as Plaintiff's employer to unemployment inquiries. Plaintiff has demonstrated that the county and the probate court may well have served as co-employers.

**IV**

This conclusion is buttressed by the multi-factor analysis often used by courts to determine whether an employer-employee relationship exists under the ADEA or ELCRA. *See Shah v. Deaconess Hosp.*, 355 F.3d 496, 499–500 (6th Cir. 2004) (applying the "common law agency test" in an ADEA case and noting the substantive differences between the agency test and the economic reality test are minimal); *Jubenville v. Mich. Dep't of Corrs.*, No. 234352, 2002 WL 31956493 (Mich. Ct. App. Dec. 20, 2002) (applying the "economic reality test" in the context of an ELCRA claim) (citing *Ashker v. Ford Motor Co.*, 245 Mich. App. 9, 15 (2001); *McCarthy v. State Farm Ins. Co.*, 170 Mich. App. 451, 455 (1988)).[1] Although the tests are usually used by courts considering

---

[1] As the Michigan Court of Appeals recognized in *Ashker* and *Jubenville*, *McCarthy* was partially overruled by *Norris v. State Farm Fire & Cas. Co.*, 229 Mich. App. 231 (1998). However,

whether a particular individual is an employee or an independent contractor, many of the factors are still useful to the determination of which of two entities a particular individual works for. *See also Simpson v. Ernst & Young*, 100 F.3d 436, 443–44 (6th Cir. 1996) (evaluating whether an individual is a partner, and thus an employer, or an employee pursuant to the common law agency test).

In the Sixth Circuit, relevant factors include the degree of control exercised by the alleged employer over the individual's work product; the skill required to perform the individual's duties; the duration of the parties' relationship; the alleged employer's ability to assign additional tasks; the individual's discretion concerning when and how to work; the payment method; the individual's role in retaining assistants; whether the work is part of the alleged employer's regular business; the individual's employee benefits; and tax treatment of the individual's compensation. *Shah*, 355 F.3d at 499–500 (quoting *Simpson*, 100 F.3d at 443) (additional citations omitted). Under Michigan law, the relevant factors are the degree of control exercised by the alleged employer over the individual's duties; payment of wages; authority to hire and fire; and the responsibility for maintenance of discipline. *McCarthy*, 170 Mich. App. at 455 (citing *Wells v. Firestone Tire & Rubber Co.*, 421 Mich. 641, 647 (1984)). No one factor is weighted more heavily than the others; rather, courts evaluate the totality of the circumstances to determine whether the individual is truly an employee of the alleged employer.

In this case, after the unhelpful factors are eliminated, the key inquiries are the degree of control the County exercised over Plaintiff's work duties, the duration of their relationship, the decision to hire and terminate her employment, evaluation and counseling in regard to her

---

the *McCarthy* court's conclusion that the economic reality test should be used to evaluate employer-employee relationships under ELCRA was not affected. *Jubenville*, No. 234352, 2002 WL 31956493, at * 1 n.1.

performance, payment of wages, and the provision of employee benefits. The chief probate judge did exercise, it appears, exclusive control over Plaintiff's judicial responsibilities, and evaluating and counseling her in regard to her performance of those duties. Administrative control, compensation and employee benefit programs, and hiring and termination decisions, however, were influenced by the county. The county developed and administered personnel policies, which were then "adopted" by the chief judge. The chief judge submitted budget proposals, including wages and benefits, but the wage and benefit decisions were ultimately made by the County Board of Commissioners. The county also treated Plaintiff as an employee of the county for income tax and unemployment insurance purposes. Moreover, while the elected chief judge changed over time, Plaintiff's employment relationship with the county remained constant.

The multi-factor tests identifies a division of responsibility over Plaintiff's employment. The tests support the conclusion that Plaintiff has advanced enough evidence to demonstrate that neither the probate court nor the county functioned as her exclusive employer—they acted together dividing duties as a matter of efficiency, convenience, and statutory requirement.

**V**

To the extent other Michigan courts and other judges within this District have reached different conclusions concerning which entity employs workers supporting the state's circuit, district, and probate courts, those decisions are largely distinguishable on their facts. In the first case cited by Defendant, *Judges of the 74th Judicial District v. Bay County*, the Michigan Supreme Court concluded that employees assisting the judges of the Bay County District Court were employees of that court and not of Bay County. 385 Mich. 710 (1971). As a result, Bay County's Board of Commissioners could not fix the employees' salaries or force them to join a union. *Id.* at 722–27. In this case, by contrast, a specific statute at least implicitly authorizes the County to set the

individual salaries as part of a line-item budget, and an Administrative Order encourages probate judges to negotiate salaries and benefits that correspond with other county employees. More importantly, the question raised does not concern union membership, but whether a probate register is entitled to the benefit of anti-discrimination legislation enacted by both the State of Michigan and the United States. Even if probate registers are not "employees" of the county that funds their salary for the purposes of collective bargaining agreements, in this specific instance, Plaintiff may well be an employee of Monmorency County for the purposes of a civil action authorized by the ADEA and ELCRA.

Next, in *Englar v. 41B District Court*, Judge Borman cited *Judges of the 74th Judicial District* for the proposition that employees supporting the 41B District Court were employees of that court and not of the court's funding unit, Clinton Township. No. 04-CV-73977, 2006 U.S. Dist. LEXIS 68157 (E.D. Mich. Sept. 22, 2006), *rev'd on other grounds*, 311 F. App'x 863 (6th Cir. 2009). Judge Borman did not provide additional analysis of the issue and it is also not clear from the opinion the extent to which it was briefed. *Id.* at *11–13. Judge Borman focused his attention on sovereign immunity, concluding that the 41B District Court was immune from suit because it is an "arm of the state" as opposed to a "political subdivision" of the state. *Id.* at *11–15. The Sixth Circuit reversed, noting that it was unclear whether the county or the court would be responsible for paying a judgment rendered in the suit, and as such, it was unclear whether the 41B District Court was actually an "arm of the state." 311 F. App'x 863. The question of whether the court or the county was plaintiff's employer was not appealed and has not been further addressed.[2]

---

[2] On remand, Judge Borman requested an amicus brief from the Michigan State Court Administrative Office, addressing whether the state or the township would be responsible for paying a judgment in the case, if indeed the plaintiffs received a favorable judgment. The amicus brief was due by the end of November 2009, but was never filed. No further action has been taken in the case.

*Englar*'s focus was whether a Michigan district court is immune from suit under § 1983 of the Civil Rights Act pursuant to the doctrine of sovereign immunity. Judge Borman never directly addressed what it means to be an "employer" in the context of an ADEA and ELCRA claim. Rather, he relied on the authority of *Judges of the 74th Judicial District*.

Next, in *Geller v. Washtenaw County*, an opinion issued by Judge Borman on the same day as *Englar*, the court granted Washtenaw County's motion for reconsideration and dismissed all of the plaintiff's claims against the county on the grounds that the county was not his employer. No. 04-CV-72947, 2006 U.S. Dist. LEXIS 68156 (E.D. Mich. Sept. 22, 2006). Before his discharge, the plaintiff was a law clerk to the Washtenaw County probate judge. *Geller* is similar to the case before the Court in that the plaintiff alleged, in part, that he was unlawfully terminated from his employment based on his gender in violation of ELCRA and the Equal Protection Clause. The only significant factual difference is that the county's employment handbook specifically stated that court workers are not considered employees of the county. Geller, like the Plaintiff in this case, received a W-2 from the county, abided by the county's policies and procedures, and was paid according to a budgetary allotment provided by the county board.

Notwithstanding those facts, the *Geller* court's extensive reliance on *Judicial Attorneys Ass'n* was misplaced for the reasons discussed in detail in the previous Opinion and Order in this case. *See Turppa v. County of Montmorency*, __ F. Supp. 2d __, No. 09-12974, 2010 WL 171133 (E.D. Mich. Apr. 28, 2010). Judge Borman decided that under Michigan law, court workers are employees of the court and not the court's funding unit. *Judicial Attorneys Ass'n* however, actually

---

See Dkt. # 04-73977. *But see Dolan v. City of Ann Arbor*, 666 F. Supp. 2d 754 (E.D. Mich. 2009) (Rosen, J.) (dismissing an FMLA complaint brought by a former employee of the Fifteenth District Court based on sovereign immunity, even though it could not be determined whether the city or the court would be responsible for paying a judgment).

stands for the proposition that the state legislature cannot require court employees to be the employees of the counties where they work. The case did not hold that court employees can never be managed or their employment administered by the counties, potentially making them employees for the purposes of the ADEA and ELCRA. Moreover, *Geller* does not account for the different context from which *Judicial Attorneys Ass'n* arose and the specific facts underlying the situation before the court in *Geller* and this case. When the ADEA and ELCRA use the word "employer" to define the person or entity that will be liable for unlawful discrimination, they use that word in a particular way. As discussed above, the term "employer" refers to the entity that issued the individual's paycheck, underwrote her benefits, created the policies and procedures governing her employment, and managed the administrative aspects of her job, as well as the entity responsible for day-to-day supervision of the employee.

Finally, in *Graves v. Wayne County Third Circuit Court*, the plaintiff, a disgruntled law clerk whose employment was terminated shortly after she informed her boss that she was pregnant, sued the Wayne Count Circuit Court and Judge Wendy M. Baxter under Title VII. No. 08-11168, 2008 U.S. Dist. LEXIS 60792 (E.D. Mich. Aug. 8, 2008). *Graves* is inapposite because it does not involve a county defendant. Moreover, the plaintiff's claims were dismissed by Judge Cohn not because she was not an employee of the county, but because she was not an "employee" at all within the meaning of Title VII. *See Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004) (noting that members of an elected judge's "personal staff" are not "employees" within the meaning of Title VII). Rather than support Defendant's motion, *Graves* illustrates that federal anti-discrimination statutes use the terms "employer" and "employee" in technical ways, and definitions of the terms cannot be extracted from other contexts and recycled without careful analysis.

# VI

The conclusion that the court and the county may be co-employers raises two follow-up questions, which were also submitted to the parties for additional briefing. First, is it possible to proceed with this action against only the county under Federal Rule of Civil Procedure 19? Second, if not, is it feasible to join the probate court as a party? And, more specifically, is the probate court immune from suit under the 11th Amendment as an arm of the state?

Defendant answers the first question in the negative, contending that the probate court is a necessary party and that the case must be dismissed because the probate court cannot be feasibly joined. Defendant does not, however, identify any factual explanation or legal authority in support of its assertion. Plaintiff, for her part, does not address the question. Defendant also answers the second question in the negative, quoting a lengthy passage from Judge Rosen's decision in *Dolan v. City of Ann Arbor*, 666 F. Supp. 2d 754 (E.D. Mich. 2009). In *Dolan*, Judge Rosen concluded that the Fifteenth District Court was protected by Eleventh Amendment sovereign immunity against suits in federal court. *Id.* at 764–65. Plaintiff responds with an equally lengthy quotation from Judge Lawson's decision in *Pucci v. Nineteenth District Court*, 565 F. Supp. 2d 792 (E.D. Mich. 2008). In *Pucci*, Judge Lawson concluded that neither the Nineteenth District Court nor its chief judge, Mark W. Sommers, were immune from suit in federal court. *Id.* at 803–05. Importantly, neither party provides in depth analysis as to the specific factors the Sixth Circuit has directed trial courts to apply in determining whether a state actor is immune from suit pursuant to the doctrine of sovereign immunity. *See Lowe v. Hamilton County Dep't of Job & Family Servs.*, __ F.3d __, No. 09-3432, 2010 WL 2605845, at *3 (6th Cir. July 1, 2010) (stating the four factors).

## A

Defendant contends that the probate court is a necessary party, but infeasible to join because

it is immune from suit in federal court as an arm of the state. *See* Part VI(B) *infra*. As relevant here, Federal Rule of Civil Procedure 19(a)(1) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if . . . in that person's absence, the court cannot accord complete relief among existing parties[.]" Defendant contends that the probate court is a necessary party because Plaintiff contends she was discriminated against by the chief judge—a state employee—and not any county official or employee. Defendant further contends that it lacks the authority to reinstate Plaintiff, and as a result, complete relief requires joinder of the probate court and Chief Judge Fitzgerald.

Plaintiff's complaint, however, seeks only money damages, not reinstatement. Accordingly complete relief can be accorded without the presence of Chief Judge Fitzgerald or the probate court as parties, although Judge Fitzgerald will likely be a witness. *See Drankwater v. Miller*, 830 F. Supp. 188, 192–94 (S.D.N.Y. 1993). Although Judge Fitzgerald and not a county employee allegedly engaged in the discriminatory conduct, the county funded Plaintiff's salary and no less logically may be required to fund a damage award. To the extent the state may be responsible for some or all of the damages, the county may seek idemnity. Because Defendant has not provided a legal justification for requiring the probate court to participate as a party in this case, the case against the county should not be dismissed under Rule 19.

**B**

As to the second question, it remains unclear whether the probate court would be immune from suit under Eleventh Amendment sovereign immunity. An entity that may be considered an "arm of the state" is immune from suit in federal court under the Eleventh Amendment, but an entity that is a "political subdivision" is not. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). There are five factors relevant to the inquiry: (1) the State of Michigan's

potential legal liability for a judgment; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; (4) whether the entity's functions fall under the traditional purview of state or local government; and (5) the source of the entity's funding. *Lowe*, No. 09-3432, 2010 WL 2605845, at *3; *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005). The most important factor is the first one: the state's potential legal liability for the judgment. *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) ("It is well-settled that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

In this case, it is not yet clear whether a judgment rendered against the probate court would be paid out of the state treasury or by Montmorency County. Although the state has general administrative authority over the probate courts, local government units like Montmorency County fund them. Indeed, as Judge Lawson noted in *Pucci*, Michigan law specifically provides that the "state . . . is not liable for claims arising out of the employment relationship of court officers or personnel or arising out of the conduct of court officers or personnel." Mich. Comp. Laws. § 600.591(12); *Pucci*, 565 F. Supp. 2d at 565. Accordingly, Judge Lawson concluded that the county would be required to pay any judgment and that the court was not immune from suit under the Eleventh Amendment. *But see Dolan*, 666 F. Supp. 2d at 761–62. Still, as Judge Rosen emphasized in *Dolan*, the statutes providing that the state is not liable for employment claims have been frequently scrutinized on constitutional grounds, and neither the state nor the county has ever admitted liability. *Id.* It is unlikely that the entity responsible for any judgment can be conclusively determined until the judgment is actually in place.

Moreover, the other factors relevant to sovereign immunity similarly fail to provide a clear answer. The other four factors are: (a) how state law defines the entity; (b) what degree of control

the state maintains over the entity; (c) whether the entity falls under the traditional purview of sate or local government; and (d) the source of the entity's funding. *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005). Pursuant to the second, state law generally classifies courts as a branch of state government. *See* Mich. Const. Art. VI (describing the state judicial system); *Judicial Attorneys Ass'n v. Michigan*, 459 Mich. 291 (1998) (describing the courts as a separate branch of state government and noting the importance of separation of powers). However, state law also requires local government entities to fund the courts, which demonstrates that the courts operate with varying degrees of shared responsibility. Moreover, before *Judicial Attorneys Ass'n*, state law specifically provided that court employees are employees of their funding units, not the state. Although that language is contrary to the state constitution, it nevertheless reveals some conflict about how court employees should be treated pursuant to state law. This factor does not identify a clear conclusion.

The final three factors identify conflicting conclusions. The third and fourth factors seem to favor immunity, but the fifth factor militates against it. Pursuant to the third factor, the Michigan Supreme Court has general supervisory authority over all the courts in the state and the chief judge of each division has authority over each individual court. *Judicial Attorneys Ass'n*, 459 Mich. 291. Under the fourth factor, the Michigan courts are traditionally viewed as a branch of the State's government. But the fifth factor suggests with equal authority that the probate court is not an arm of the state—the responsibility for funding them rests entirely on the local government units where they operate.

In summary, it is still unclear whether suit could be maintained against the probate court if it were joined as a defendant. Notably, some clearer answers may be forthcoming. *Pucci* was appealed to the Sixth Circuit and oral argument was held before Judges Batchelder, Gibbons, and Maloney on October 16, 2009. Case No. 08-2017. An opinion has not been issued. *Dolan* was also

-17-

appealed and the briefing is now complete. Case No. 09-2493. But it is not yet clear how those cases will be resolved or if the Sixth Circuit will provide some clear guidance on the immunity issues surrounding Michigan's courts. The Sixth Circuit's recent decision in *Lowe* emphasized that the burden of proving immunity lies with the entity asserting it. No. 09-3432, 2010 WL 2605843, at *3. Indeed, in order to carry its burden with respect to the most important factor, the Sixth Circuit indicated that the entity asserting immunity would be required show that the state is "potentially legally liable for a judgment against it" or that "the state actually will reimburse" the entity for damages paid. *Id.* at *5–6.

**C**

Defendant also contends that the probate court cannot be feasibly joined because it was not named as a party in Plaintiff's administrative complaint to the EEOC. The contention will not be considered because it is beyond the scope of the additional briefing requested in the last Opinion and Order, and irrelevant in light of the conclusion that the probate court is not "required to be joined" under Rule 19.

**VII**

Accordingly, it is **ORDERED** that Defendant's motion to dismiss [Dkt. # 4] is **DENIED**.

It is further **ORDERED** that the case management and scheduling order [Dkt. # 14] is **AMENDED** as follows:

- Expert disclosure, plaintiff: October 1, 2010
- Expert disclosure, defendant: October 29, 2010
- Pretrial disclosures: April 1, 2011
- Discovery cutoff: December 2, 2010
- Settlement conference: Nov. 30, 2010 at 3:30 p.m.

- Motions challenging experts: January 14, 2011
- Dispositive motions: January 14, 2011
- Motions in limine April 15, 2011
- Stipulation for case evaluation: October 8, 2011
- Final pretrial order and jury instructions: May 6, 2011
- Final pretrial conference: May 12, 2011 at 3:30 p.m.
- Trial date: May 24, 2011 at 8:30 a.m.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 14, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 14, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS